**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAMES GRUSHACK,<br><br>　　　　　*Plaintiff*,<br><br>　　v.<br><br>NEW JERSEY DEPARTMENT OF<br>CORRECTIONS, et al.,<br><br>　　　　　*Defendants*. | Civil Action No. 21-623<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

Plaintiff is a resident at the Special Treatment Unit ("STU") in Avenel, New Jersey. Plaintiff alleges that he was subjected to abuse by other STU residents and that Defendants failed to adequately respond to Plaintiff's reports of abuse. Currently pending before the Court are motions to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by the following Defendants: (1) New Jersey Department of Corrections ("DOC") and Marcus O. Hicks, D.E. 20; (2) Kenneth Rozov, D.E. 21; and (3) New Jersey Department of Human Services ("DHS"), New Jersey Department of Health ("DOH), Dr. Doreen Stanzione, Shantay Adams, Judith M. Persichilli, Carole Johnson and Merrill Main (the "DHS and DOH Defendants"); D.E. 22. Plaintiff filed a brief in opposition to the motions, D.E. 29, to which Defendants replied, D.E. 30, 32, 33.[1] The Court reviewed the submissions made in support and opposition to the motions

---

[1] The DOC and Hicks's brief in support of their motion to dismiss, D.E. 20-1, will be referred to as "DOC Defs. Br."; Rozov's brief in support of his motion to dismiss, D.E. 21-1, will be referred to as "Rozov Br."; and the DHS and DOH Defendants' brief in support of their motion to dismiss, D.E. 22-1, will be referred to as "DHS Defs. Br.". Plaintiff's memorandum in opposition, D.E. 29, will be referred to as "Plf. Opp.". Rozov's reply brief, D.E. 30, will be referred to as "Rozov Reply"; and the DHS and DOH Defendants' reply brief, D.E. 32, will be referred to as "DHS Defs.

and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motions are **GRANTED in part and DENIED in part**.

## I. FACTUAL BACKGROUND[2] & PROCEDURAL HISTORY

During the events at issue, Plaintiff was a resident of the STU[3] and housed in the south wing. Compl. ¶¶ 23-24. Plaintiff was diagnosed with ADHD, bipolar disorder, and borderline intelligence. *Id.* ¶ 23. Non-party Romano Brooks was also a resident of the STU and was also housed in the south wing. *Id.* ¶ 24. Plaintiff alleges that Brooks had been reported for at least twelve incidents of sexual misconduct during an undetermined time-period yet was permitted to stay in the south wing with the other residents. *Id.* ¶ 25. Plaintiff continues that he was a victim of Brooks' improper behavior on multiple occasions throughout 2019. Plaintiff states that Brooks threatened Plaintiff, exposed himself to Plaintiff, and engaged in other sexual misconduct that was directed towards Plaintiff. *Id.* ¶ 47. Plaintiff also indicates that Brooks forced Plaintiff to perform oral sex on him on November 9 and 11, 2019. *Id.* ¶¶ 29, 30.

Plaintiff reported the two incidents of sexual assault to two non-party corrections officers on November 11, 2019. *Id.* ¶ 31. After his report, Plaintiff and Brooks were placed in "solitary

Reply". Finally, the DOC and Hicks's filed a reply brief at D.E. 31 and then a corrected reply brief at D.E. 33. The Court will consider the corrected brief at D.E. 33, and it will be referred to as "DOC Defs. Reply".

[2] The facts are derived from Plaintiff's Complaint ("Compl."). D.E. 1. When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

[3] "The STU is a secure facility designated for the custody, care and treatment of sexually violent predators pursuant to the Sexually Violent Predator Act (SVPA) [N.J. Stat. Ann. §§ 30:4-27.24 to -27.38]." *In re Civil Commitment of R.T.*, No. A-4263-18T3, 2020 WL 1496821, at *1 n.1 (N.J. App. Div. Mar. 27, 2020).

lockup" for 72 hours and Plaintiff was then moved to a different section of the south wing.  *Id.* ¶¶ 32, 34.  Plaintiff was threatened that he would face "additional lock up time" if he continued to complain about the sexual and physical abuse.  *Id.* ¶ 32.  Brooks also returned to the south wing, and no corrective or protective measures were put in place to protect Plaintiff from Brooks.  *Id.* ¶ 36.  Moreover, Plaintiff alleges that Brooks exposed himself to a therapist and corrections officer immediately upon his release from solitary lock up.  *Id.* ¶ 32.  And on December 19, 2019, Plaintiff was sent to group therapy with Brooks.  *Id.* ¶ 37.  It is not clear, however, if Brooks continued to sexually harass or threaten Plaintiff after the November sexual assaults.

Plaintiff alleges that through 2019, he continuously informed multiple people, including the Individual Defendants,[4] about Brooks' sexual misconduct.  *Id.* ¶ 47.  In addition, on November 12, 2019, Plaintiff and/or his father called multiple entities and individuals, including Defendant Rozov (the former Ombudsman for the DOC) "to complaint about the many instances of sexual and physical violence" perpetrated against Plaintiff.  *Id.* ¶¶ 15, 33.  Plaintiff and/or his father also wrote a letter, dated November 18, 2019, to Defendant Hicks (the Commissioner of the DOC) about the misconduct against Plaintiff, and a similar letter to the DOH, dated December 20, 2019.  *Id.* ¶¶ 6, 35, 38.  Finally, on December 20 and 30, 2019, Plaintiff's public defender reached out to numerous individuals, including to Defendants Dr. Stanzione and Main, to determine what steps were being taken to protect Plaintiff from sexual misconduct and abuse.  *Id.* ¶¶ 41, 44.  Dr. Stanzione is the Acting Director of Psychology at the STU, *id.* ¶ 17, and Main is the Clinical Director of the STU, *id.* ¶ 13.

---

[4] The Individual Defendants are Marcus Hicks, Carole Johnson, Judith M. Persichilli, Merrill Main, Ken Rozov, Shantay Adams, Marc Sims, James Slaughter, George Robinson, and Doreen Stanzione.  Robinson, Slaughter, and Sims have not yet entered appearances in this matter; it does not appear that Slaughter has been served.

Plaintiff alleges that these multiple reports of misconduct were ignored. *Id.* ¶¶ 49-51. In addition, Plaintiff contends that Stanzione, Main, and unnamed therapist Defendants have used their knowledge of Plaintiff's abuse as a tool during Plaintiff's individual and group therapy sessions. *Id.* ¶¶ 43, 45. Plaintiff also pleads that he has witnessed corrections officers laughing about his sexual assault. *Id.* ¶ 49. Finally, Plaintiff alleges that because of his multiple complaints, he has been a target for physical abuse from other residents on the south wing. *Id.* ¶ 44. For example, Plaintiff states that he has been repeatedly punched in the ribs by residents who ask, "what the DOC is doing to protect [Plaintiff] from abuse." *Id.* While not entirely clear, this conduct appears to have occurred both before and after the November 9 and 11 sexual assaults. *Id.* ¶ 26-27, 41. Plaintiff contends that he also reported this physical abuse to Defendants and that these complaints have also been ignored. *Id.* ¶¶ 48-49.

Plaintiff filed his Complaint on January 12, 2021, asserting constitutional claims pursuant to 42 U.S.C. § 1983, state constitutional claims under the New Jersey Civil Rights Act ("NJCRA"), and state-law based tort claims. Plaintiff's claims generally stem from his allegations that Defendants ignored his complaints of sexual violence and failed to protect Plaintiff from sexual and physical assaults and threats. D.E. 1. Defendants subsequently filed the instant motions to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 20, 21, 22. On August 26, 2021, after the motions were fully briefed, this Court entered a stipulation of partial dismissal that dismissed Counts I and II of the Complaint as to the DOC, DHS, and DOH, as well as to Hicks, Johnson, Persichilli, Main, Robinson, Rozov, Adams, and Stanzione in their official capacities. D.E. 36. Plaintiff only brought claims against Hicks, Johnson, and Persichilli in their official capacities. Compl. ¶¶ 6, 8, 10. As a result, the partial dismissal results in a complete dismissal of Counts I and II as to these Individual Defendants, and as to the DOC, DHS, and DOH.

Accordingly, the Court only addresses the arguments as they pertain to the remaining parties and claims.

## II.    LEGAL STANDARD

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth.  *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011).  The Court, however, "must accept all of the complaint's well-pleaded facts as true."  *Fowler*, 578 F.3d at 210.

## III.    ANALYSIS

### A. Constitutional Claims

In Count I, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983.  To state a § 1983 claim, a plaintiff must demonstrate that "(1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state or territorial law." [5]  *Burt v. CFG Health*

_____

[5] Section 1983, in relevant part, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the

*Sys.*, No. 15-2279, 2015 WL 1646849, at *2 (D.N.J. Apr. 14, 2015).  In Count II, Plaintiff asserts

claims against all Defendants pursuant to the New Jersey Civil Rights Act ("NJCRA").  The

NJCRA provides a private cause of action to

> [a]ny person who has been deprived of any substantive due process
> or equal protection rights, privileges or immunities secured by the
> Constitution or laws of the United States, or any substantive rights,
> privileges or immunities secured by the Constitution or laws of this
> State, or whose exercise or enjoyment of those substantive rights,
> privileges or immunities has been interfered with or attempted to be
> interfered with, by threats, intimidation or coercion by a person
> acting under color of law, may bring a civil action for damages and
> for injunctive or other appropriate relief.

N.J. Stat. Ann. § 10:6-2.  The "NJCRA was modeled after § 1983, [and so] courts in New Jersey

have consistently looked at claims under the NJCRA through the lens of § 1983 and have

repeatedly construed the NJCRA in terms nearly identical to its federal counterpart."  *Velez v.*

*Fuentes*, No. 15-6939, 2016 WL 4107689, at *5 (D.N.J. July 29, 2016) (internal quotations and

citation omitted).  Therefore, the Court considers Plaintiff's Section 1983 and NJCRA claims

together.

### 1.    Failure to State a Claim

Plaintiff appears to assert a failure to protect claim under the Eighth Amendment.  The

Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted

of crimes.[6]  *Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981).  To plead an Eighth Amendment

---

> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

[6] The DHS and DOH Defendants briefly question whether Plaintiff's claims arise under the Eighth

failure to protect claim, "an inmate must show that he is 'incarcerated under conditions posing a substantial risk of serious harm' and that the defendant was deliberately indifferent to the risk." *Belt v. Fed. Bureau of Prisons*, 336 F. Supp. 3d 428, 438 (D.N.J. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  In this context, deliberate indifference is a subjective standard.  In other words, "[i]t is not sufficient that the official should have known of the risk." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012).  Instead, a plaintiff must establish that "the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety." *Id.* (quoting *Beers-Capital v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).  Finally, a plaintiff must plead facts demonstrating that the defendant's deliberate indifference caused the plaintiff harm.  *Id.* at 366-67.

The DHS and DOH Defendants first argue that Plaintiff fails to assert a claim as to them because they are responsible for treatment at the STU while the DOC operates and provides custodial care.  DOH Br. at 15.  The DHS and DOH Defendants continue that because they are only responsible for treatment and do not operate or provide security at the STU, the failure to intervene claims must fail as to them.[7]  *Id.* at 17.  The Court disagrees.

---

or Fourteenth Amendments because Plaintiff is not a prisoner.  DHS Defs. Br. at 17 n.5.  Plaintiff pleads that he is "under the care" of the DOC at the STU.  Compl. ¶ 4.  As the Court understands it, under the SVPA, individuals are civilly, not criminally, committed to the STU.  Civilly committed individuals "enjoy[] due process protections under the Fourteenth Amendment" rather than the Eighth Amendment.  *Banda v. Adams*, 674 F. App'x 181, 184 (3d Cir. 2017).  This distinction, however, appears to be immaterial because the Third Circuit has determined that at least for certain claims, it is "sufficient to apply the Eighth Amendment standard" to a non-convicted detainees claims.  *Id.* (applying Eighth Amendment inadequate care claim standard to non-convicted detainee's claims).  As a result, the Court construes Plaintiff's claims under the Eighth Amendment.

[7] In making this argument, the DHS and DOH Defendants rely on N.J. Stat. Ann. § 30:4-27.34(a), which sets forth the division of labor between state entities at the STU.  DHS Br. at 15.  The Court notes, however, that the statute also provides that the DOC and DOH are required to participate in an "interagency review board to facilitate the coordination of the policies and procedures of the

Although the DHS and DOH Defendants are responsible for treatment by state statute, none of the authority cited by the DHS and DOH Defendants demonstrates that this means that they are not prison officials or that a state statute can impact constitutional rights.  While Stanzione and Adams both deal with treatment at the STU, the DHS and DOH Defendants provide no information to support the inference that they are not "prison officials," such that they are absolved of their constitutional duty to protect individuals in the STU.  Without this support, the Court treats all staff at the STU the same for Plaintiff's constitutional claims, regardless of which entity employs which individual.[8]

The DHS and DOH Defendants also appear to argue that Plaintiff's complaints to the DHS and DOH Defendants were essentially useless because Plaintiff also complained to the DOC, and the DHS and DOH Defendants would merely have reported the events to the DOC.  DHS Defs. Br. at 20.  Again, the Court disagrees.  This argument goes to causation and is beyond the boundaries of Plaintiff's Complaint.  To plead a deliberate indifference claim, Plaintiff must assert facts demonstrating that a defendant knew of the risk but was deliberately indifferent, and that this conduct caused Plaintiff's harm.  *Bistrian,* 696 F.3d at 367.  Plaintiff does so here.  As discussed,

---

[STU]," N.J. Stat. Ann. § 30:4-27.34, and the two agencies jointly established provisions to provide "[a] *secure environment* for involuntarily civilly committed sexually violent predators." N.J. Admin. Code § 8:131-1.2(a)(2) (emphasis added).  These statutory and regulatory provisions undercut the DHS and DOH Defendants' arguments.

[8] For the first time in his reply brief, Rozov argues that the deliberate indifference claim must be dismissed as to him because he is not a prison official and was not responsible for security of residents of the STU.  Rozov Reply at 9-10.  Rozov also maintains that the deliberate indifference claim must be dismissed because it is premised on negligent conduct, which is not enough to support a deliberate indifference claim.  *Id.* at 10.  However, in his initial brief, Rozov did not address any grounds to dismiss Plaintiff's constitutional claims on the merits.  Accordingly, the Court will not consider these arguments as they were not properly raised.  *See Cobra Enters., LLC v. All Phase Servs., Inc.*, No. 20-4750, 2020 WL 2849892, at *1 (D.N.J. June 1, 2020) ("As a matter of procedure, this Court will not accept arguments offered for the first time in the reply brief, as they were not properly asserted in the opening brief and Plaintiffs have not had the opportunity to respond to them.").

Plaintiff alleges that he informed Stanzione and Adams of the abuse and that they failed to investigate or take corrective action.  Compl. ¶ 49.  Thus, Plaintiff sufficiently pleads failure to protect claims as to Stanzione and Adams.

Next, the DHS and DOH Defendants maintain that Plaintiff's claims fail because he does not provide specifics as to the how Plaintiff made grievances or the contents of the grievances. The DHS and DOH Defendants also contend that Plaintiff's complaints were not enough to put them on notice of a substantial risk of harm.  DHS Defs. Br. at 20.  The Court again disagrees. Plaintiff alleges that his public defender informed Stanzione that Plaintiff had been complaining about assaults in group therapy.  Compl. ¶¶ 41, 44.  Plaintiff adds that he personally informed Stanzione and Adams about the threats and misconduct from Brooks.  *Id.* ¶¶ 47-48.  Plaintiff alleges that he told Stanzione that he was routinely punched in the ribs by other inmates, *id.* ¶ 44, and that Brooks was threatening him, had raped him, and was engaging in other acts of sexual misconduct, *id.* ¶ 47.  These allegations are sufficient at the motion to dismiss stage to establish that Plaintiff reported grievances to Stanzione and Adams such that both were aware of a potential risk to Plaintiff's safety.  Plaintiff's allegations about how and what he told Stanzione and Adams are adequate to support a deliberate indifference claim.

Relatedly, the DHS and DOH Defendants also argue that although Plaintiff alleges that Brooks was involved in twelve prior incidents of sexual misconduct, Plaintiff fails to allege that these incidents involved Plaintiff.  DHS Defs. Br. at 21.  The DHS and DOH Defendants continue that because Plaintiff does not plead that he was involved in these prior events, his complaints were too speculative.  *Id.*  In support, the DHS and DOH Defendants rely on *Blackstone v. Thompson*, 568 F. App'x 82 (3d Cir. 2014).  In *Blackstone*, the Third Circuit affirmed the District Court's order granting summary judgment, "agree[ing] with the District Court that Blackstone did

not adduce evidence to show that [the defendant] operated from the requisite mindset." *Id.* at 84. *Blackstone*, therefore, is inapposite. *Blackstone* was at the summary judgment, rather than the motion to dismiss, stage. More importantly, the plaintiff in *Blackstone* told the defendant that he was "not 'getting along' and did not 'feel comfortable' with his cellmate." 568 F. App'x at 84. The Third Circuit concluded that these statements were not enough to establish that the defendant knew of and intentionally disregarded a risk. Here, Plaintiff appears to allege that before the November assaults, he told numerous Defendants that Brooks was threatening, and exposing himself to, Plaintiff. Compl. ¶ 47. Plaintiff's complaints are more specific than those in *Blackstone.* Moreover, Plaintiff's allegation that Defendants were aware of twelve prior incidents involving Brooks provide additional information that Defendants knew that Brooks could pose a risk to Plaintiff. Taking these allegations as true and as a whole, the Court concludes that Plaintiff sufficiently includes enough factual allegations to establish that Stanzione and Adams knew of and consciously disregarded a known risk as to Plaintiff's safety.

Finally, the DHS and DOH Defendants maintain that the constitutional claims must be dismissed as to them because "there appears to be no sexual assault by Brooks against Plaintiff that occurred after November 11th." DHS Defs. Br. at 21. The Court agrees that it not entirely clear whether Brooks continued to sexually harass and threaten Plaintiff after November 11. Plaintiff, however, alleges that since speaking up about the abuse, he has become a target of increased physical abuse from other residents. Compl. ¶ 41. Plaintiff also pleads that by December 20, 2019, safety concerns for Plaintiff were severe. *Id.* ¶ 40. Based on these allegations, the Court concludes that at a minimum, it is plausible to infer that the physical assaults continued after November 11. Moreover, Plaintiff alleges that he reported Brooks' conduct to Stanzione and Adams, among others, before the November sexual assaults. *Id.* ¶ 47. Consequently, Plaintiff's

claims do not necessarily fail if Plaintiff was not a victim of sexual assault after November 11.  In sum, Plaintiff's allegations are sufficient to state a failure to protect claim as to Stanzione and Adams.[9]

### 2.     Qualified Immunity

Stanzione, Adams, and Rozov argue that they are entitled to qualified immunity because Plaintiff fails to establish that they violated a clearly established right.[10]  *See* Rozov Br. at 15-16; DHS Defs. Br. at 37-38.  "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."  *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  In determining whether qualified immunity exists, a court must assess (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Courts are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first[.]"  *Id.* at 236.  "If the plaintiff fails to satisfy either prong, the defendant is entitled to judgment as a matter of law."  *James v. City of*

---

[9] The DHS and DOH Defendants argue that to the extent Plaintiff is attempting to state a claim under the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30301, *et seq*, it must be dismissed because PREA does not have a private right of action.  DHS Defs. Br. at 15.  The Court does not construe Plaintiff's Complaint as asserting an independent claim under the PREA and, as a result, does not reach this argument.

[10] These Defendants also contend that they are entitled to qualified immunity under New Jersey state law.  *See, e.g.*, DHS Defs. Br. at 35.  New Jersey's qualified immunity doctrine applies to claims brought under the NJCRA and "tracks the federal standard."  *Brown v. New Jersey*, 165 A.3d 735, 743 (N.J. 2017).  Thus, the Court addresses Defendants' right to qualified immunity under state and federal law together.

*Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (finding defendant police officers were entitled to qualified immunity at the motion to dismiss stage) (citing *Pearson*, 555 U.S. at 232).  But "[t]he qualified immunity analysis involves a fact-intensive inquiry that is generally ill-suited for resolution at the pleadings stage." *Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 121 (D.N.J. 2017) (quoting *Batiz v. Brown*, No. 12-581, 2013 WL 1137531, at *7 (D.N.J. Mar. 14, 2013)).  Therefore, "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006).

Because the Court already concluded that Plaintiff sufficiently pled that a constitutional violation occurred, the Court turns its focus to the second prong of the qualified immunity defense. A clearly established right is one that is "sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.'" *Reichle*, 566 U.S. at 664 (quoting *al-Kidd*, 563 U.S. at 741).  Thus, the second prong of the qualified immunity analysis "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier*, 533 U.S. at 206).  An officer will not be subjected to the burdens of litigation "[i]f the law at [the time of the defendant's allegedly unlawful conduct] did not clearly establish that the officer's conduct would violate the Constitution[.]" *Id.*

While a case directly on point is not required for a clearly established right to exist, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741; *see also Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017) ("We typically look to Supreme Court precedent or a consensus in the Courts of Appeals to give an officer fair warning that his conduct would be unconstitutional.").  Furthermore, courts should not

"define clearly established law at a high level of generality[,]" but rather determine "whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is established."). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201) (internal quotation marks omitted).

The DHS and DOH Defendants maintain that there is no settled law demonstrating that "health-related public officials" can be liable for "failing to protect individuals in an institution from other residents." DHS Defs. Br. at 38. As discussed, there is clear Supreme Court precedent establishing a claim under the Eighth Amendment for a prison official's failure to protect an inmate from inmate-on-inmate violence. *See Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018) (discussing Supreme Court decisions involving deliberate indifference under the Eighth Amendment, including *Farmer v. Brennan*, 511 U.S. 825 (1994)); *see also Shorter v. United States*, --- F.4[th] ---, 2021 WL 3891552, at *3 (3d Cir. 2021) (explaining that in *Farmer*, the Supreme Court concluded that prison officials may be liable for "displaying deliberate indifference to a substantial risk that a prisoner will be attacked by other prisoners" (citing *Farmer*, 511 U.S. at 834)). The DHS and DOH Defendants' argument centers on the fact that because they are not DOC employees, they do not control patient safety. Again, their argument relies on a New Jersey statute. But as discussed, the DHS and DOH Defendants do not point to any legal authority establishing that because of this division, they are not prison officials while doing their jobs at the STU. Consequently, the Court concludes that as prison officials, the clearly established legal authority demonstrates that Stanzione and Adams could be liable for "displaying deliberate indifference to a substantial risk

that a prisoner will be attacked by other prisoners." *Shorter*, 2021 WL 3891552, at *3. As a result, the DHS and DOH Defendants are not entitled to qualified immunity, and their motion is denied on these grounds.

Turning to Rozov, he contends that there is no clearly established constitutional right to an adequate or exhaustive investigation, relying on *Fuchs v. Mercer County*, 260 F. App'x 472 (3d Cir. 2008) and *Merkle v. Upper Dublin School District*, 211 F.3d 782 (3d Cir. 2000). *Fuchs* and *Merkle* are a materially different cases that simply are irrelevant to an inmate's rights under the Eighth Amendment. *See Merkle*, 211 F.3d at 789-90 (discussing probable cause for the plaintiff's false Fourth Amendment false arrest claim); *Fuchs*, 260 F. App'x at 473-74 (addressing a district attorney's office's failure to investigate the plaintiff's complaint about an officer and the plaintiff's substantive due process rights under the Fourteenth Amendment). In addition, Rozov's argument misses the crux of Plaintiff's allegations. Plaintiff alleges that Rozov failed to act, *see* Compl. ¶¶ 65-66, not that his investigation was incomplete. Thus, it is also not clear from the face of the Complaint that Rozov is entitled to qualified immunity. Rozov's motion to dismiss is also denied on these grounds.

### B. Tort Claims

In Counts III through VIII, Plaintiff asserts various tort claims against Defendants, including for negligence, intentional infliction of emotional distress, and negligent training and supervision. Defendants seek to dismiss Plaintiff's tort claims on numerous grounds.

#### 1.    Failure to Exhaust

The DHS and DOH Defendants first argue that Plaintiff's tort claims must be dismissed because Plaintiff failed to exhaust his administrate remedies. DHS Br. at 6-7. Plaintiff counters that because he is seeking monetary damages, the exhaustion requirement does not apply. Plf.

Opp. at 15-16.  Outside of stating that there is an exhaustion requirement and citing two cases that do the same, the DHS and DOH Defendants fail to explain any further details about the STU's grievance procedures or the apparent exhaustion requirement.  The Court, therefore, will not dismiss any of Plaintiff's claims on these grounds.

### 2.    New Jersey Tort Claims Act

#### a.    Notice Requirements

Next, the DOC Defendants and Rozov contend that most of Plaintiff's tort claims must be dismissed because Plaintiff failed to comply with the notice requirements of the New Jersey Tort Claims Act ("TCA").  *See, e.g.*, DOC Defs. Br. at 13-20.  Plaintiff contends that he substantially complied with the notice requirement.  Plf. Opp. at 8-10.

A party that asserts a tort claim seeking damages from a public entity or employee must comply with the TCA, which "establishes the procedures by which [such] claims may be brought." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 61 A.3d 906, 915 (N.J. 2013) (quoting *Beauchamp v. Amedio*, 751 A.2d 1047, 1049 (2000)).  One requirement is that a plaintiff must file a notice of claim that, among other things, provides "the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and "[a] general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim."  N.J. Stat. Ann. § 59:8-4.

The TCA notice requirement, however, "is not intended as 'a trap for the unwary.'"  *Lebron v. Sanchez*, 970 A.2d 399, 406 (N.J. App. Div. 2009) (quoting *Lowe v. Zarghami*, 731 A.2d 14, 629, 630 (N.J. 1999)).  Therefore, "substantial rather than strict compliance with the notice requirements of the Act may satisfactorily meet the statute's mandates."  *Id.*  Substantial compliance with the TCA means that "notice has been given in a way, which though technically

defective, substantially satisfies the purposes for which notices of claims are required." *Id.* at 406.

To establish substantial compliance, a plaintiff must demonstrate the following:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute.

*Id.*

The DOC Defendants argue that Plaintiff's Notice of Tort Claim (the "Notice") did not give them adequate notice of all the claims set forth in the Complaint because the Notice only addresses the November 9 incident. DOC Defs. Br. at 17. The Court agrees in part. Plaintiff's Notice clearly addresses Brooks' twelve prior incidents of sexual misconduct and the November 9 sexual assault. *See* Sandora Cert., Ex. B. In the Notice, Plaintiff states that the DOC, DHS, and DOH are responsible for the November 9th assault because these agencies failed to protect Plaintiff. *Id.* But Plaintiff's Notice does not address the second sexual assault on November 11, Brooks' alleged continued harassment (to the extent that it happened), the assaults from other STU patients, or the DHS and DOH Defendants' use of Plaintiff's sexual assault during therapy sessions. In addition, Plaintiff's Notice is date January 31, 2020. *Id.* Thus, Plaintiff could have included these events in the Notice and fails to sufficiently explain why these additional allegations were not included.

Plaintiff counters that Defendants are not prejudiced. Plf. Opp. at 8. Specifically, Plaintiff contends that Defendants were on notice of the November 9th incident and the preceding reports of Brooks' sexual misconduct. *Id.* at 10. Defendants do not appear to dispute that Plaintiff's Notice provided them with notice of Plaintiff's claims to the extent they are premised only on the November 9th incident. *See* DOC Defs. Br. at 19. Plaintiff, however, does not address any of the

events that followed the November 9th sexual assault or his physical assault allegations from other patients. Accordingly, the Court concludes that Plaintiff failed to comply with the TCA to the extent his tort claims are premised on events that occurred after November 9th, as well as his physical assault claims. These claims, therefore, are dismissed for failure to comply with the TCA.

Rozov also argues that Plaintiff's Notice fails to provide reasonable notice of events that occurred before November 9th. Rozov Br. at 20. As discussed, Plaintiff's Notice clearly states that Brooks was written up for at least twelve incidents of sexual assault before November 9th. *See* Sandora Cert., Ex. B. This information is sufficient to put Defendants on notice that Plaintiff's claims involve events that involved Brooks and occurred before November 9th. Thus, Rozov's motion is denied on these grounds.

In sum, the Court concludes that Plaintiff's Notice complies with the TCA requirements as to Plaintiff's tort claims involving Brooks up to and including the November 9th sexual assault. Plaintiff, therefore, may proceed with these claims.

### b.    Immunities

Next, Defendants all argue that they are immune from suit for Plaintiff's tort claims pursuant to multiple immunities set forth in the TCA. *See, e.g.*, DOC Defs. Br. at 20-22 (arguing that Hicks is immune from tort claims pursuant to N.J. Stat. Ann. §§ 59:5-2(b)(4) and 59:6-7(b) and the DOC is immune under separate subsections of the TCA). Plaintiff counters that Defendants cannot rely on any TCA immunities due to N.J. Stat. Ann. § 59:2-1.3. Plf. Opp. at 3-5. Section 59:2-1.3 provides, in part, as follows:

> Notwithstanding any provision of the "New Jersey Tort Claims Act," [ ] to the contrary:
>
> (1) immunity from civil liability granted by that act to a public entity or public employee shall not apply to an action at law for damages as a result of a sexual assault . . . which was caused by

> a willful, wanton or grossly negligent act of the public entity or
> public employee.

N.J. Stat. Ann. § 59:2-1.3(a)(1).  Again, Plaintiff's tort claims are premised on Defendants' failure

to protect Plaintiff from the November 9th sexual assault.  While not entirely clear, Plaintiff

appears to allege that throughout 2019, he repeatedly informed Defendants that Brooks was

threatening Plaintiff, Defendants were aware of at least twelve prior incidents of misconduct by

Brooks, and Defendants ignored Plaintiff's complaints.  Moreover, Plaintiff appears to allege that

he informed Defendants before November 9th of Brooks' behavior.  Compl. ¶ 47.  Taking

Plaintiff's allegations as true, they are sufficient to constitute willful, wanton, or grossly

negligent[11] behavior by some or all the Defendants. Moreover, it is reasonable to infer that

Defendants' failure to act, in part, allowed the November 9 sexual assault to occur.  Accordingly,

as pled, N.J. Stat. Ann. § 59:2-1.3 may be applicable.

Rozov and the DHS and DOH Defendants rely on *Grant v. Williams*, No. 19-16952, 2021

WL 71589 (D.N.J. Jan. 8, 2021) to establish that Defendants' alleged failure to act did not cause

the sexual assault.  *See* Rozov Reply at 3; DHS Defs. Reply at 10-11.  The plaintiff in *Grant*

brought suit in state court alleging that her former attorney sexually harassed her.  The plaintiff

then filed suit in federal court, alleging that the New Jersey state court system caused her mental

anguish and financial loss because of the resolution of her matter involving her sexual harassment

allegations. *See Grant*, 2021 WL 71589, at *1.  In a footnote, the district court explained that N.J.

---

[11] "Gross negligence refers to a person's conduct where an act or failure to act creates an unreasonable risk of harm to another because of the person's failure to exercise slight care or diligence." *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742 (N.J. 2016) (quoting N.J. Model Jury Charge (Civil) § 5.12)).  Gross negligence, however, "does not require willful or wanton misconduct." *Id.*  Willful or wanton conduct falls into an "intermediary position between simple negligence and the intentional infliction of harm." *Foldi v. Jeffries*, 461 A.2d 1145, 1154 (N.J. 1983).

Stat. Ann. § 59:2-1.3 did not apply because the "[p]laintiff does not contend that the state courts caused Williams to sexually harass her." *Id.* at *4 n.7.  But here, Plaintiff alleges that Defendants "ignored a blatant threat" and "allowed sexual misconduct . . . to go unabated."  Compl. ¶ 49. Thus, Plaintiff clearly alleges that Defendants' conduct caused the sexual assault to occur, and *Grant* is distinguishable.

The interplay between Section 59:2-13 and any applicable TCA immunities is better left for summary judgment when the Court will have a full record.  As a result, the Court will not address Defendants' specific arguments as to each of the potential TCA immunities.

### c.      Premises Liability Claim

In Plaintiff's negligence claim (Count VI), Plaintiff pleads that "[e]ach Defendant owed plaintiff a duty to protect plaintiff from harm because defendants invited plaintiff onto their property and Romano Brooks posed a dangerous condition on Defendants' property."  Compl. ¶ 82.  The DHS and DOH Defendants construe this paragraph as a premise liability claim and argue that is must be dismissed pursuant to N.J. Stat. Ann. § 59:4-2.  DHS Defs. Br. at 31-32.  N.J. Stat. Ann. § 59:4-2 sets forth a public entity's liability for injuries caused by dangerous conditions of the entity's property.  N.J. Stat. Ann. § 59:4-2.  Dangerous conditions are limited to the "physical condition of the property itself and not to activities on the property."  *Levin v. County of Salem*, 626 A.2d 1091, 1095 (N.J. 1992) (quoting *Sharra v. City of Atlantic City*, 489 A.2d 1252, 1255 (N.J. App. Div. 1985)).  In this instance, nothing in Plaintiff's Complaint addresses the physical condition of any property.  As a result, to the extent that Plaintiff intended to plead a premises liability claim, it is dismissed.

### C.  Punitive Damages

Finally, Rozov and the DOC Defendants contend that Plaintiff's claim for punitive

damages must be dismissed because Plaintiff does not establish personal knowledge by these Defendants of Plaintiff's complaints.  As a result, these Defendants continue, Plaintiff cannot establish actual malice, wanton, or willful disregard.  *See, e.g.*, Rozov Br. at 21-23.  Punitive damages may be awarded pursuant to New Jersey's Punitive Damages Act.  Generally, an award of punitive damages requires a finding of a high degree of culpability.  *See Sandler v. Lawn-A-Mat Chem. & Equip. Corp.*, 358 A.2d 805, 811 (N.J. App. Div. 1976) (stating that "actual malice" is "nothing more or less than intentional wrongdoing [,] an evil-minded act") (citations omitted).  The act expressly provides that a plaintiff must prove, by clear and convincing evidence, that a defendant that caused harm acted with "actual malice," or a "wanton and willful disregard of persons who foreseeably might be harmed" by its "acts or omissions."  *See* N.J. Stat. Ann. § 2A:15-5.12.

As discussed, Plaintiff alleges that throughout 2019, Main and Rozov were warned of Brooks' alleged sexual misconduct involving Plaintiff and twelve other apparently separate incidents.  *See* Compl. ¶ 47.  These allegations are sufficient at the motion to dismiss stage to support Plaintiff's punitive damages claim.  As a result, Rozov and the DOC Defendants' motions are denied on these grounds.

### IV.    CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss, D.E. 20, 21, and 22, are **GRANTED in part and DENIED in part**.  When dismissing claims pursuant to Rule 12(b)(6), a court typically gives a plaintiff leave to amend, provided that any deficiencies could be cured through an amended pleading.  *See Shave v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  In this instance, Plaintiff cannot cure the identified deficiencies for the dismissed tort claims because he cannot change the contents of his Notice of Tort claim.  As a result, the tort claims that are

dismissed for failure to comply with the TCA are dismissed with prejudice.  The premises liability claim, however, is dismissed without prejudice because Plaintiff could conceivably cure the identified factual deficiencies.  Plaintiff shall have thirty (30) days to file an amended complaint, which these cures the deficiencies, as noted herein.  If Plaintiff does not file an amended pleading, the premise liability claim will be dismissed with prejudice.  An appropriate Order accompanies this Opinion.

Dated:          September 30, 2021

John Michael Vazquez, U.S.D.J.