UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| James Grushack,<br><br>                Plaintiff,<br><br>        v.<br><br>New Jersey Department of Corrections, Marcus O. Hicks, in his official capacity as Commissioner of the NJ Department of Corrections and personally, New Jersey Department of Human Services, Carole Johnson, in her official capacity as Commissioner of the NJ Department of Human Services, New Jersey Department of Health, Judith M. Persichilli, in her official capacity as Commissioner of the NJ Department of Health, Merrill Main, Marc Sims, George Robinson, James Slaughter, Ken Rozov, Shantay Adams, Dr. Doreen Stanzione, Therapist Doe 1-2, John Doe Corrections Officers 1-3, John Doe 1-10, and State Agency 1-10,<br><br>                Defendants. | Index No.: 2:21-cv-00623<br><br>Civil Action: Violation of Civil Rights<br><br><br>**AMENDED COMPLAINT** |

Plaintiff James Grushack, by and through his attorneys at the Anthony P. Kearns Law Group, PC, by way of Complaint against the defendants appears and says as follows:

<u>NATURE OF THE CASE, JURISDICTION AND VENUE</u>

1.      This is a civil action brought, inter alia, by plaintiff for negligence and violation of his civil rights by the wrongful actions of New Jersey Department of Correction,

Department of Human Services, and Department of Health employees.  More specifically, plaintiff alleges that each of the defendants violated one or more provisions of Federal or State law including 42 U.S.C. § 1983  and § 1988, and U.S. Const. Amend. VIII. Plaintiff further alleges that defendants are liable under theories of negligence. This Complaint alleges that by virtue of their wrongful conduct, defendants are liable to plaintiff jointly and severally for actual damages, attorney fees, and punitive damages as the Court sees fit.

2.      Jurisdiction of this Court is invoked pursuant to the provisions of 28 U.S.C. §1331 and §1343 as this is an action to redress violations of plaintiff's rights pursuant to the Federal Constitution and Federal law, and the fact that the amount in controversy (i.e. damages) exceeds $75,000.00.  Jurisdiction over the State law claims is premised upon the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367.

3.      Venue of this Court is premised upon the residences of the various parties as well as the location of the acts which form the basis of the instant suit, pursuant to 28 U.S.C. §1391(b)(1) and §1391(b)(2).

## PARTIES

4.      Plaintiff is a natural person who, at all times relevant, was under the care of the New Jersey Department of Corrections at the Special Treatment Unit in Avenel, New Jersey. Plaintiff is a legal resident of the United States and the State of New Jersey.

5.      Defendant New Jersey Department of Corrections is a state/local/municipal agency/entity which operates the Special Treatment Unit and is legally answerable to plaintiff on the charges herein claimed.

6.     Defendant Marcus O. Hicks is, or at all times relevant hereto was, a natural person and the Commissioner of the NJ Department of Corrections. He is sued in his official and personal capacity.

7.     Defendant New Jersey Department of Human Services is a state/local/municipal agency/entity which oversees the Special Treatment Unit, maintains the State's mental  health facilities, and is legally answerable to plaintiff on the charges herein claimed.

8. At all times relevant Defendant Carole Johnson is, or at all times relevant hereto was, a natural person and the Commissioner of the NJ Department of Human Services and oversees the entities of the DHS, which includes the Special Treatment Unit. She is sued in her official capacity only.

9.     Defendant New Jersey Department of Health is a state/local/municipal agency/entity which oversees, and is responsible for providing treatment to, the STU.

10.     Defendant Judith M. Persichilli is, or at all times relevant hereto was, a natural person and the Commissioner of the NJ Department of Health. She is sued in her official capacity only.

11.     Defendant George Robinson is, or at all times relevant hereto was, a natural person and Administrator of the Adult Diagnostic & Treatment Center and the Special Treatment Unit. He is sued in his official and personal capacity.

12.     Defendant James Slaughter is, or at all times relevant hereto was, a natural person and Assistant Administrator overseeing the day-to-day operations of the Special Treatment Unit for Defendant Robinson. He is sued in his official and personal capacity.

13.     Defendant Merrill Main is, or at all times relevant hereto was, a natural person and Clinical Director of the Special Treatment Unit. He is sued in his official and personal capacity.

14.     Marc Sims is, or at all times relevant hereto was, a natural person and Assistant Supervisor in the NJ Department of Corrections. He is sued in his official and personal capacity.

15.     Ken Rozov is, or at all times relevant hereto was, a natural person and Ombudsman for the NJ Department of Corrections. He is sued in his official and personal capacity.

16.     Shantay Adams is, or at all times relevant hereto was, a natural person and Unit Director at the Special Treatment Unit. She is sued in her official and personal capacity.

17.     Dr. Doreen Stanzione is, or at all times relevant hereto was, a natural person and Acting Director of Psychology at the Special Treatment Unit. She is sued in her official and personal capacity.

18.     Therapist Doe 1-2 are fictitious names used to identify therapists at the Special Treatment Unit only known to plaintiff as "Mr. Van Pelt" and "Mrs. Madru". They are sued in their official and personal capacity.

19.     John Doe Corrections Officers 1-3 are fictitious names used to identify corrections officers at the Special Treatment Unit only known to plaintiff as "CO Conway", "CO Imoka", and "CO Matthews". They are sued in their official and personal capacity.

20.     John Doe 1-10 are fictitious names used to identify defendant natural persons whose identities are presently unknown.

21.     Agency 1-10 are fictitious names used to identify defendant agencies and/or entities whose identities are presently unknown.

22.     The individual defendants herein sued were all acting under color of State law as duly appointed active employees of the NJ Department of Corrections, NJ Department of Human Services, or NJ Department of Health and in such capacity were the agents, servants, and employees of the NJ Department of Corrections, NJ Department of Human Services, or NJ Department of Health.

## STATEMENT OF FACTS

23.     At all times material, plaintiff was a resident at the STU in Avenel, NJ, diagnosed with ADHD, bipolar disorder, and borderline intelligence.

24.     Plaintiff was housed in the south wing of the STU and was regularly in close proximity to a resident named Romano Brooks ("Brooks"), among other hostile residents.

25.     Romano Brooks was reported for at least 12 incidents of sexual misconduct including, sexual harassment, sexual assault, and rape, while housed in the south wing of the STU. Despite these reports, Brooks was allowed to continue residing in the south wing with the other residents he was tormenting.

26.     Residents of the south wing routinely assaulted plaintiff, evidenced by a number of bruises on his body, by punching him in the ribs.

27.     Plaintiff was the victim of sexual and physical violence on multiple occasions throughout 2019 at the hands of Brooks and other residents.

28.     Brooks threatened Plaintiff with sexual violence, and plaintiff was in fact the victim of sexual violence at the hand of Brooks, on multiple occasions throughout 2019.

29.     In one instance, November 9, 2019, Brooks forced plaintiff to perform oral sex on

him.

30.     Plaintiff was afraid to report Brooks until, again, on November 11, 2019, Brooks told plaintiff to continue where he left off and forced plaintiff to perform oral sex on him.

31.     Plaintiff reported these two incidents of sexual assault to "CO Conway" and "CO Imoka" on November 11, 2019. The incidents were then reported to SID and IA for investigation and plaintiff's shirt was taken for DNA sampling.

32.     Plaintiff and Brooks were forced into solitary lockup for 72 hours following this incident. Plaintiff was threatened with additional lockup time if he continued to complain about being sexually and physical assaulted. Brooks exposed himself to CO Matthews and Therapist Kros immediately after he was released from the 72-hour lockup.

33.     On November 12, 2019, calls were made by plaintiff and/or his father to Ken Rosov, DOC Commissioner's Office, AG's Office, ARC, and Disability Rights of NJ to complain of the many instances of sexual and physical violence perpetrated by residents of the STU south wing against plaintiff.

34.     On November 14, 2019, plaintiff was released from his solitary lockup and moved to a different section of the south wing.

35.     On November 18, 2019, plaintiff and/or his father wrote a letter to Commissioner Hicks of the DOC about the sexual and physical violence plaintiff has faced while at the STU. No response was received.

36.     On December 18, 2019, Brooks was let back into the south wing of the STU with plaintiff. No corrective or protective measures were taken, and Brooks was free to roam the STU

and come in close proximity to plaintiff.

37.    On December 19, 2019, Brooks was sent to the same group therapy as plaintiff.

38.    On December 20, 2019, plaintiff and/or his father wrote a letter to the DOH regarding the sexual assaults. No response was received.

39.    Residents of the south wing have heard Brooks bragging about his rape and sexual assaults against plaintiff.

40.    In fact, a number of residents witnessed the sexual and physical assaults against plaintiff including, but not limited to, Robert Bond, John Geere, Kevin Hildreth, Harry Houser, Patrick Lewis, David Snow, Kenneth Stahl, and Leon Swift.

41.    On or about December 20, 2019, safety concerns for plaintiff became so severe that his public defender ("PD") intervened and reached out to Dr. Doreen Stanzione ("Stanzione"), Merrill Main ("Main"), and the Attorney General's Office ("AG's Office") inquiring into what the STU is doing to protect plaintiff who has, since February 2019, been complaining about sexual and physical assault in group therapy. Plaintiff continually spoke up against this abuse but speaking up only served to antagonize others in the south wing and his group therapy, making him a targeting and increasing the abuse. No protective or corrective actions were taken since February 2019 to protect plaintiff and others from sexual and physical violence.

42.    Plaintiff's PD requested his removal from the south wing and highlighted the overwhelming evidence of sexual misconduct from Brooks, including plaintiff's bruising, witness accounts, and other victims.

43.    Given plaintiff's (non-violent) rule-breaking behavior, Stanzione, Main, and the

Defendant Doe Therapists instead used their knowledge of plaintiff's sexual and physical abuse as a learning device during his individual and group therapy.

44. On or about December 30, 2019, Plaintiff's PD again expressed serious concerns for his safety to the Assistant Superintendent of the DOC, Stanzione, Main, and the AG's Office. Plaintiff's PD again highlighted the repeated complaints about physical abuse made by plaintiff and that multiple residents routinely punch him in the ribs, again asking what the DOC is doing to protect the client from abuse.

45. Defendants, including Stanzione and Main, attempted to coverup the incidents by questioning the validity of plaintiff's accusations, premised on a dubious retraction when plaintiff was questioned during group therapy. A group therapy attended by those he was accusing.

46. Despite this retraction, plaintiff has not wavered. He strongly maintains the allegations of sexual and physical abuse when discussing the matter with those outside of the STU.

47. Throughout 2019, plaintiff continuously informed DOC, DHS, DOH, and STU employees, including, but not limited to, Merrill Main, Marc Sims, George Robinson, James Slaughter, Ken Rozov, Shantay Adams, Marcus Hicks, Doreen Stanzione, "Mr. Ven Pelt", "Mrs. Madru", "CO Conway", CO Imoka", "CO Matthews", and the Assistant Superintendent of the DOC, that Brook was threatening him if he did not engage in sexual acts with him, raping him, exposing himself to plaintiff, and engaging in other acts of sexual misconduct.

48. Throughout 2019, plaintiff continuously informed DOC, DHS, DOH, and STU employees, including, but not limited to,  Merrill Main, Marc Sims, George Robinson, James

Slaughter, Ken Rozov, Shantay Adams, Marcus Hicks, Doreen Stanzione, "Mr. Ven Pelt", "Mrs. Madru", "CO Conway", CO Imoka, "CO Matthews", and the Assistant Superintendent of the DOC that other residents in the south wing were physically abusing him.

49.     Defendants Robinson, Slaughter, Main, Adams, Stanzione, "Mr. Van Pelt", and "Mrs. Madru" ignored plaintiff's numerous complaints of abuse, failed to investigate the allegations of abuse, failed to take any corrective action, and failed to implement any policies or procedures to protect plaintiff from sexual and physical violence. Plaintiff regularly complained of abuse and these Defendants are, or should have been, aware of the abuse he suffered. Instead of protecting him, they used the sexual abuse perpetrated against him as a learning device during his therapy due to his rule-breaking behavior. These Defendants actively ignored a blatant threat to plaintiff's, and other residents', safety and allowed sexual misconduct and physical violence to go unabated in the south wing of the STU.

50.     Defendants Sims, "CO Conway", "CO Imoka", and "CO Matthews" knew or should have known of Brooks' repeated sexual misconduct. Plaintiff complained directly to "CO Conway" and "CO Imoka" and his complaints were ignored with no protective measures taken. Brooks exposed himself to "CO Matthews" and no actions were taken by anyone at the STU. Plaintiff heard STU corrections officers on more than one occasion laughing and joking about the sexual violence plaintiff was enduring. Defendant Sims is an Assistant Supervisor at the DOC and oversees the corrections officers at the STU. By virtue of his position, Sims knew or should have known of plaintiff's complaints of sexual and physical abuse. These defendants failed to take any action or protective steps to safeguard plaintiff from the abuse he was suffering and reacted with

callous disregard for plaintiff as a human while laughing about his rape.

51.     From top to bottom there was a systemic failure to protect plaintiff and other residents from sexual and physical violence. Beyond that, this failure stems from each defendants' intentional and malicious disregard for plaintiff's many complaints. Instead of taking corrective or protective actions after plaintiff's complaints, defendants manipulated him during group therapy, laughed about his rape, threatened him with lockup if he continued to complain about his abuse, and allowed Brooks, among other residents, to continue to sexually and physically assault him.

52.     As a direct and proximate result of defendants' actions, plaintiff continues to suffer physical, mental, and emotional injury as well as other damages as a direct and proximate result of defendants' wrongful acts.

## ADDITIONAL FACTS REGARDING LIABILITY

53.     Defendants New Jersey Department of Corrections ("DOC"), acting through its Commissioner Marcus O. Hicks, New Jersey Department of Human Services ("DHS"), acting through its Commissioner Carole Johnson, and New  Jersey Department of Health ("DOH"), acting through its Commissioner Judith M. Persichilli (collectively "State Agencies" or "State Agency Defendants"), are the ultimate policymaking authorities for the policies and procedures officially adopted and implemented by the employees of the State Agencies, including the officers and employees named in the complaint.

54.     The State Agencies are also legally responsible for the hiring, training, retention, supervision, and discipline of all their employees.

55.     The State Agencies are also legally responsible for the acts of all their employees related to the scope of their employment, under theories of agency, respondeat superior, vicarious liability, and related legal principles.

56.     The nature of the wrongful acts perpetrated by the individual defendants was of the kind that each individual defendant was employed to perform, and/or occurred substantially within the time and space limits of each individual defendant's employment, and/or was actuated in whole or part by purpose to serve the employer, and/or involved actual use of force not unforeseeable by the employer.

57.     The State Agencies are public entities, and their employees are public employees. The individual defendants wrongfully executed and enforced the relevant laws and policies binding upon them, for all of the reasons explained more fully elsewhere in the Complaint. These wrongful actions were undertaken in the absence of reasonable good faith.

58.     Although these wrongful acts were indeed egregious, they were not undertaken outside the scope of each individual's employment with the State Agencies but rather were undertaken within the scope of employment.  Therefore, the public entities, the State Agencies, should be held vicariously liable for the wrongful acts of the individual defendants.

59.     For all of the reasons explained more fully elsewhere in the Complaint, plaintiff has suffered permanent/lasting injury as a direct and proximate result of the tortious and wrongful actions herein complained. The tortious acts of multiple natural persons and/or entities all combined, and all contributed, as substantial factors proximately causing the injuries herein complained. To the extent that the total injury/loss suffered by plaintiff cannot

be subdivided and/or the liability for its several parts cannot be attributed and allocated to individual tortfeasors, plaintiff demands to hold all tortfeasors jointly and severally liable.

60.     Upon information and belief, the wrongful conduct described above was perpetrated in conjunction with a longstanding and pervasive pattern of misconduct and/or gross negligence utilized by the employees of the State Agencies to the detriment of numerous residents, including Plaintiff.  More specifically, employees of the State Agencies failed to protect residents from rape and/or sexual assault, turned a blind eye to rape and/or sexual assault between residents, and ignored complaints from residents who were raped and/or sexually assaulted.

61.     Upon information and belief, the discovery phase of this litigation will reveal many instances wherein the State Agencies, by and through their employees, has allowed, condoned, encouraged, and otherwise engaged in wrongful acts, including, but not limited to, failing to protect residents from rape and/or sexual assault, turning a blind eye to rape and/or sexual assault between residents, and ignoring complaints from residents who were raped and/or sexually assaulted.  Despite being put on notice of such allegations, the State Agencies utterly failed to discipline the guilty employees and utterly failed to train and supervise them in order to protect residents from future sexual abuses, but rather allowed, condoned, and encouraged such wrongful conduct to continue.

## CAUSES OF ACTION

## COUNT I – VIOLATION OF 42 U.S.C. § 1983

62.     Plaintiff repeats and reiterates each and every allegation contained previously in the Complaint and incorporates the same herein by reference as if set forth in their entirety.

63.     At all times, plaintiff had the Constitutional right to be free from cruel and unusual punishment while in the State Agencies' custody for reasons including (but not limited to) the provisions of U.S. Const. amend. VIII.

64.     At all times, defendants failed to comply with the Prison Rape Elimination Act ("PREA") while plaintiff was in the State Agencies' custody.

65.     At all times, defendants failed to enact or otherwise implement PREA policies intending to protect residents, including plaintiff, from sexual and physical violence.

66.     The defendants individually and in concert participated and conspired with one another (under the color of law) to deprive plaintiff of his civil, federal, and constitutional rights by failing to protect him from rape and/or sexual assault, turning a blind eye to rape and sexual assault against plaintiff, and ignoring plaintiffs many complaints of rape and sexual violence, as described more fully elsewhere in the Complaint.

67.     The individual defendants violated 42 U.S.C. § 1983 by causing plaintiff to suffer serious personal injury by means of depriving him of his Constitutional and federal rights as delineated above. As a direct and proximate result of such violations of statute, plaintiff has been materially harmed and suffered substantial damages described more fully elsewhere.

## COUNT II - VIOLATION STATE LAW AND 42 U.S.C. § 1988

68.     Plaintiff repeats and reiterates each and every allegation contained previously in the Complaint and incorporates the same herein by reference as if set forth in their entirety.

69.     For substantially identical reasons as those described above, all of the wrongful acts complained of the defendants as violations of 42 U.S.C. § 1983 and the Federal

Constitution also constitute violations of plaintiff's rights under the New Jersey Constitution and violations of New Jersey statutory law.

70.     As explained more fully elsewhere, each defendant was acting at all relevant times in furtherance of the interests of the State Agencies.

71.     As explained more fully elsewhere, plaintiff has suffered material harm and substantial damages as a direct and proximate result of such wrongful acts and violations of law by the defendants.

## COUNT III - PUBLIC EMPLOYEE WRONGFULLY ENFORCING LAW

72.     Plaintiff repeats and reiterates each and every allegation contained previously in the Complaint and incorporates the same herein by reference as if set forth in their entirety.

73.     The State Agency Defendants are public entities, and their employees are public employees.

74.     The individual defendants wrongfully executed and enforced the relevant laws and policies binding upon them, for all of the reasons explained more fully elsewhere the Complaint.  Among other things, the individual defendants willfully neglected the laws and policies binding upon them, among them the Eight Amendment and PREA, to deter the sexual assault of those in their custody.  These wrongful actions were undertaken in the absence of reasonable good faith.

75.     This wrongful execution and enforcement of the law proximately caused harm and damages to the plaintiff, for reasons explained more fully elsewhere in the Complaint.

76.     Although these wrongful acts were indeed egregious, they were not undertaken

outside the scope of each individual's employment at the State Agencies, but rather were undertaken within the scope of employment.  Therefore, the public entities, NJ DOC, NJ DHS, and NJ DOH should be held vicariously liable for the wrongful acts of the individual defendants.

## COUNT IV – NEGLIGENCE

77.    Plaintiff repeats and reiterates each and every allegation contained previously in the Complaint and incorporates the same herein by reference as if set forth in their entirety.

78.    Each defendant owed plaintiff a duty of reasonable care to protect plaintiff from physical and sexual violence while in their care, custody, or supervision.

79.    Each defendant owed plaintiff a duty of care because each defendant had a special relationship with plaintiff. This special relationship arose because of the high degree of vulnerability of the plaintiff entrusted to their care. As a result of this high degree of vulnerability and risk of sexual violence in the STU, defendants had a duty to establish measures of protection and establish adequate and effective policies and procedures calculated to detect, prevent, and address sexual and physical violence.

80.    By accepting custody and/or supervision of the plaintiff, defendants established a relationship with plaintiff and in so doing, owed plaintiff a duty to protect plaintiff from injury and sexual violence. Further, defendants entered into a fiduciary relationship with plaintiff by undertaking the custody, supervision of, and/or care of the plaintiff. As a result of plaintiff being a resident at the STU, defendants also held a position of empowerment over plaintiff. Further, defendants, by holding themselves out as being able to provide a safe

environment for residents, solicited and/or accepted this position of empowerment. The State Agency Defendants, through their employees, exploited this power over plaintiff and thereby put the plaintiff at risk for sexual abuse.

81.     By establishing and/or operating the STU, accepting the plaintiff as a participant in their program, holding their facilities and programs to be a safe environment for plaintiff, accepting custody of plaintiff, and by establishing a fiduciary relationship with plaintiff, defendants entered into an express and/or implied duty to properly supervise plaintiff and provide a reasonably safe environment for plaintiff and other residents, who participated in their programs. Defendants owed plaintiff a duty to properly supervise plaintiff and other residents to prevent harm from foreseeable dangers.

82.     Each defendant owed plaintiff a duty to protect plaintiff from harm because defendants invited plaintiff onto their property and Romano Brooks posed a dangerous condition on Defendants' property.

83.     Each defendant breached its duties to plaintiff by failing to use reasonable care. Each defendant's failures include, but are not limited to, failing to properly supervise Romano Brooks, failing to properly supervise plaintiff, failing to protect plaintiff from a known danger, ignoring plaintiff's complaints of sexual violence, and failing to enact or otherwise implement policies intending to protect residents, including plaintiff, from sexual and physical violence.

84.     As a direct result of the foregoing, plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

### COUNT V - EMOTIONAL DISTRESS

## INTENTIONALLY/ NEGLIGENTLY INFLICTED

85.     Plaintiff repeats and reiterates each and every allegation contained previously in the Complaint and incorporates the same herein by reference as if set forth in their entirety.

86.     As explained above, the individuals named in the Complaint, through their misconduct, negligence, or omissions, allowed plaintiff to be brutally assaulted and raped on numerous occasions during his commitment. As a result, plaintiff has developed severe psychological trauma.

87.     This conduct was so extreme and outrageous that it can fairly be said to constitute intentional acts intended to cause emotional distress, or alternatively the conduct was undertaken recklessly in deliberate disregard of a high degree of probability that emotional distress would follow, or alternatively the conduct was so negligent that it would cause a reasonable person fright from a reasonable fear of immediate personal injury, and such personal injury did actually occur here.

88.     A reasonable person in plaintiff's position would experience such severe emotional distress no one could be expected to endure, namely reasonable fear of personal injury, actual personal injury, actual and lasting emotional injury, and a reasonable fear of law enforcement personnel as a result of these incidents. This wrongful conduct proximately caused plaintiff to actually suffer all of this emotional and psychological distress and all of this fear, and also to suffer serious personal injury.  Plaintiff therefore specifically requests punitive damages.

## COUNT VI – NEGLIGENT TRAINING AND SUPERVISION

89.     Plaintiff repeats and reiterates each and every allegation contained previously in the Complaint and incorporates the same herein by reference as if set forth in their entirety.

90.     At all times material, the individual defendants sued in their personal capacities were employed by the DOC, DHS, or DOH and were under each defendant's direct supervision, employ, and control when they committed the wrongful acts alleged herein. The individual defendants sued in their personal capacity engaged in the wrongful conduct while acting in the course and scope of their employment with the State Agency Defendants.

91.     The State Agency Defendants had a duty, arising from their employment of the individual defendants sued in their personal capacities, to ensure that they complied with the PREA while plaintiff was in the State Agencies' custody and to enact or otherwise implement policies intending to protect residents, including plaintiff, from sexual and physical violence.

92.     Further, the State Agency Defendants owed a duty to train and educate employees and administrators and establish adequate and effective policies and procedures calculated to detect, prevent, and address sexual and physical violence, among other inappropriate behavior and conduct between residents.

93.     The State Agency Defendants were negligent in the training, supervision, and instruction of their employees. The State Agency Defendants failed to timely and properly educate, train, supervise, and/or monitor their agents or employees with regard to policies and procedures that should be followed when sexual abuse of a resident is suspected, observed, or reported.

94.     The State Agency Defendants were additionally negligent in failing to supervise,

monitor, chaperone, and/or investigate Romano Brooks and/or failing to create, institute, and/or enforce rules, policies, procedures, and/or regulations to prevent Mr. Brooks' sexual abuse of Plaintiff.

95.     In failing to properly supervise Mr. Brooks, and in failing to establish such training procedures for employees and administrators, the State Agency Defendants failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

96.     As a direct and proximate result of the foregoing, Plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

## COUNT VII – NEGLIGENT RETENTION

97.     Plaintiff repeats and reiterates each and every allegation contained previously in the Complaint and incorporates the same herein by reference as if set forth in their entirety.

98.     At all times material, the individual defendants sued in their personal capacity were employed by the State Agency Defendants and were under the State Agencies' direct supervision, employ, and control when they committed the wrongful acts alleged herein.

99.     The State Agency Defendants became aware or should have become aware of the numerous incidents of physical and sexual violence against plaintiff and plaintiff's complaints of physical and sexual violence made to the individual defendants named herein and failed to take any further action to remedy the problem and failed to investigate or remove Romano Brooks from the STU. Instead, defendants allowed Mr. Brooks to remain in the STU, mingle with residents, be in close contact with plaintiff, and allowed him to continue sexually

assaulting and harassing plaintiff, other residents, and corrections officers.

100.    The State Agency Defendants negligently retained the individual defendants sued in their personal capacity with knowledge of Mr. Brooks' propensity for the type of behavior and knowledge of Mr. Brooks various physical and sexual assaults on plaintiff which resulted in plaintiff's injuries in this action. These defendants took no corrective or protective action to ensure the safety of the other residents and allowed Mr. Brooks to continue his campaign of sexual violence against residents.

101.    The State Agency Defendants negligently retained the individual defendants sued in their personal capacity in positions where they: ignored sexual and physical violence against plaintiff, had the opportunity to take corrective and protective action to ensure plaintiff's safety, failed to take any corrective or protective action to ensure plaintiff's safety, and continued to allow Mr. Brooks to perpetrate acts of sexual violence against plaintiff and other residents.

102.    In failing to timely remove the individual defendants sued in their personal capacity from their positions or terminate their employment, the State Agency Defendants failed to exercise the degree of care that a reasonably prudent person would have exercised under similar circumstances.

102.    As a direct and proximate result of the foregoing, plaintiff sustained physical, emotional, and psychological injuries, along with pain and suffering.

### COUNT VIII - INDIVISIBLE HARM/ JOINT AND SEVERAL LIABILITY

103.    Plaintiff repeats and reiterates each and every allegation contained previously

in the Complaint and incorporates the same herein by reference as if set forth in their entirety.

104.    For all of the reasons explained more fully elsewhere in the Complaint, plaintiff has suffered permanent/lasting injury as a direct and proximate result of the torts herein complained.

105.    For all of the reasons explain more fully elsewhere in the Complaint, the tortious acts of multiple natural persons and/or entities all combined and all contributed as substantial factors proximately causing the injuries herein complained.

106.    To the extent that the total injury/loss suffered by plaintiff cannot be subdivided and/or the liability for its several parts cannot be attributed and allocated to individual tortfeasors, plaintiff demands to hold all tortfeasors jointly and severally liable.

## COUNT IX – PUNITIVE DAMAGES

107.    Plaintiff repeats and reiterates each and every allegation contained previously in the Complaint and incorporates the same herein by reference as if set forth in their entirety.

108.    Defendants' conduct is especially egregious. Defendants either allowed Brooks to continue to sexually assault plaintiff after his complaints, or demonstrated willful indifference to this conduct.

109.    Defendants' conduct falls outside the standards of civilized decency and shocks the conscious.

110.    The aforesaid acts of each defendant were committed with outrageous, wanton, and willful disregard for the safety, protection, and well-being of plaintiff, warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests relief and judgment against defendants, as follows:

1. For general and consequential damages including (but not necessarily limited to) actual damages, pain and suffering, past and future medical expenses, mental anguish, and loss of earning capacity;

2. For punitive damages;

3. For reasonable attorneys' fees;

4. For costs of suit; and

5. For such further and different relief as the court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues in the above matter.

DATED:  October 21, 2021          BY:_____*/s/ Edward J. Hesketh*_____
                                  Edward J. Hesketh, Esq.
                                  The Anthony P. Kearns Law Group, PC
                                  54 Old highway 22, Suite 251
                                  Clinton, NJ 08809
                                  T: 908-243-0800
                                  F: 908-450-1409
                                  Attorneys for Plaintiff